UNITED STATES DISTRICT COURT
WESTERN DISTRICT

JENNA EIDENMULLER, an individual,

                              Plaintiff,

       vs.

THE UNIVERSITY OF WASHINGTON, a
Washington public education institution;
ANA MARI CAUCE, former University of
Washington President; JANICE HUTSON,
former University of Washington Health
Sciences Immunization Program Manager;
AMY RODDA, University of Washington
Speech and Hearing Sciences Director of
Clinical Education; KATIA HARB,
University of Washington Senior Director of
Environmental Health & Safety,

                         Defendants.

NO.

**COMPLAINT**

JURY DEMANDED

## I.    INTRODUCTION

1.      This is a civil rights action under 42 U.S.C. § 1983 along with related claims under Washington State law. Jenna Eidenmuller, the Plaintiff, is a formerly admitted student to the University of Washington's Master of Science in Speech-Language Pathology program. Ms. Eidenmuller seeks redress for Defendants'

COMPLAINT
CASE NO.

Page 1

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

unlawful removal after Ms. Eidenmuller requested a religious exemption from the University's COVID-19 vaccine mandate. Although Defendants accepted that Ms. Eidenmuller's sincere religious belief prevented her from taking the COVID-19 vaccine and Ms. Eidenmuller offered safe and workable alternatives consistent with her future clinical role and responsibilities, Defendants denied her any reasonable accommodation and removed her from the University. This violated her rights secured by the U.S. Constitution, federal law, and Washington State law.

2.      Defendants' actions burdened Ms. Eidenmuller's sincerely held religious beliefs and treated her differently from similarly situated students. Ms. Eidenmuller brings claims under the First and Fourteenth Amendments of the U.S. Constitution, Washington State Constitution, and Washington state law. She seeks damages and reasonable attorney's fees and costs.

## II.      JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

4.      Ms. Eidenmuller brings claims under 42 U.S.C. § 1983, seeking damages, injunctive relief, and attorney's fees under 42 U.S.C. § 1988.

5.      This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

6.      Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in this District and the events giving rise to the claims occurred here.

## III.      PARTIES

### A.  Jenna Eidenmuller

7.      Ms. Eidenmuller was an undergraduate student at the University of Washington from September 2019 to June 2023. She was admitted to the University's Master of Science in Medical Speech-Language Pathology on March 10, 2023, to begin fall 2023. She is a resident of King County.

COMPLAINT
CASE NO.

Page 2

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

**B.  University of Washington**

8.      Defendant University of Washington is a public education institution of the state of Washington.

**C.  Ana Mari Cauce – in her personal capacity**

9.      Defendant Ana Mari Cauce was the University's President from October 2015 to July 2025.

10.      On information and belief, Defendant Cauce had final authority over the University's vaccine exemption and accommodation policy.

11.      On information and belief, Defendant Cauce took no steps to ensure the religious exemption and accommodation process was compliant with the First Amendment of the U.S. Constitution, Washington's Constitution, WLAD, or the University's contractual obligations.

12.      In the alternative, Defendant Cauce knew or should have known that religious accommodations were being categorically denied, and either participated in or allowed that practice to continue unchecked.

**D.  Janice Hutson - in her personal capacity**

13.      Defendant Janice Hutson was the University's Health Sciences Immunization Program Manager at all times relevant to this action.

14.      On information and belief, Ms. Hutson was an architect of the University's COVID-19 medical and religious exemption policies and procedures at all times relevant to this action. As an architect, Defendant Hutson was personally involved in designing and directing the process for exemption and accommodation requests.

15.      Defendant Hutson personally reviewed and denied Ms. Eidenmuller's request for religious exemption or accommodation.

COMPLAINT
CASE NO.

Page 3

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

16.     Despite acknowledging and accepting Ms. Eidenmuller's sincere religious belief, Defendant Hutson refused to engage in a meaningful interactive process or consider proposed accommodations.

17.     Defendant Hutson affirmatively instructed programs with clinical requirements—including Hearing and Speech Sciences—to uniformly deny religious accommodation appeal requests, including Ms. Eidenmuller's appeal.

18.     Defendant Hutson took no steps to ensure the accommodation process was compliant with the First Amendment of the U.S. Constitution, Washington's Constitution, WLAD, or the University's contractual obligations.

19.     In the alternative, Defendant Hutson knew or should have known that religious accommodations were being categorically denied, and either participated in or allowed that practice to continue unchecked.

**E.  Amy Rodda – in her personal capacity**

20.     Defendant Amy Rodda was the University's Speech and Hearing Sciences Director of Clinical Education during all times relevant to this action.

21.     Defendant Rodda personally reviewed and denied Ms. Eidenmuller's religious exemption denial appeal request.

22.     Despite having independent authority to evaluate accommodations, Defendant Rodda adopted and enforced Defendants' blanket denial policy without individual consideration of constitutional rights and obligations.

23.     On information and belief, Defendant Rodda approved a different religious exemption request mere months after removing Ms. Eidenmuller from the University.

24.     Defendant Rodda took no steps to ensure the accommodation process was compliant with the First Amendment of the U.S. Constitution, Washington's Constitution, WLAD, or the University's contractual obligations.

COMPLAINT                                    Page 4                    Ellis | Li | McKinstry
CASE NO.                                                              1700 Seventh Avenue, Suite 1810
                                                                     Seattle, WA 98101-1820
                                                                     206.682.0565  Fax: 206.625.1052

25. In the alternative, Defendant Rodda knew or should have known that religious accommodations were being categorically denied, and either participated in or allowed that practice to continue unchecked.

**F. Defendant Katia Harb – in her personal capacity**

26. Defendant Katia Harb was the University's Senior Director of Environmental Health & Safety Sciences at all times relevant to this action.

27. Defendant Harb sent a letter to Ms. Eidenmuller's counsel on May 25, 2023, falsely alleging that Defendants individually evaluated Ms. Eidenmuller's request for a religious exemption or accommodations.

28. On information and belief, Defendant Harb took no steps to ensure the accommodation process was compliant with the First Amendment of the U.S. Constitution, Washington's Constitution, WLAD, or the University's contractual obligations.

29. In the alternative, Defendant Harb knew or should have known that religious accommodations were being categorically denied, and either participated in or allowed that practice to continue unchecked.

## IV.   FACTUAL ALLEGATIONS

**A. The COVID-19 pandemic.**

30. In 2020, the COVID-19 pandemic emerged, leading to widespread public health measures and adjustments.

31. In August 2021, Governor Inslee issued Proclamation 21-14.1, requiring all health care workers in Washington health care settings to be fully vaccinated from COVID-19 by October 18, 2021 (the *Mandate*). The Mandate expressly provided for disability and religious exemptions.

32. The Mandated was lifted on October 31, 2022.

**B. Jenna Eidenmuller.**

COMPLAINT
CASE NO.

Page 5

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

33.     Ms. Eidenmuller attended the University of Washington from September 2019 to June 2023, graduating with a Bachelor of Science in Speech and Hearing Sciences.

34.     Ms. Eidenmuller was an excellent student on the Dean's List. In addition to her studies, Ms. Eidenmuller regularly spent time working and volunteering for various speech pathology programs – including as a Registered Behavior Technician at South Sound Behavior Therapy, Pediatric Speech Therapy Volunteer at Summit Center for Child Development, Undergraduate Research Assistant at Neurodevelopmental Disorders Language & Learning Lab, and Pediatric Speech Therapy Intern at Little Sprouts Therapy Center.

35.     Outside of school, Ms. Eidenmuller spent time as the State Bowling Team Captain, building a small business (Sourdough by Jenna), volunteering as a children's summer camp counselor, and as President of a Christian living community.

36.     Ms. Eidenmuller's religious beliefs are central to her identity. Her Christian faith shapes her decisions, relationships, and understanding of morality and the value of life.

37.     On September 26, 2021, Ms. Eidenmuller submitted a Student COVID-19 Vaccine Attestation Form, seeking a religious exemption, to the University of Washington. The University approved Ms. Eidenmuller's religious exemption.

**C.  The University's Master of Science in Medical Speech-Language Pathology.**

38.     The University of Washington's Master of Science in Medical Speech-Language Pathology (*Med-SLP*) is a full-time, two-year program that prepares students for work as speech-language pathologists.

39.     During both years, students participate in clinical education and experiential learning, including practicum and internship experiences. In the first

COMPLAINT                                   Page 6                    Ellis | Li | McKinstry
CASE NO.                                                              1700 Seventh Avenue, Suite 1810
                                                                     Seattle, WA 98101-1820
                                                                     206.682.0565  Fax: 206.625.1052

year, students complete a series of rotations in the University's Speech and Hearing Clinic. During the second year, students complete three community-based rotations and one full-time internship, which is completed locally or nationally depending on interest and site availability.

40.     Med-SLP made accommodations to the program due to the COVID-19 pandemic. For example, in 2021 this included maintaining in-person classes (with masks) but conducting clinical rotations via Zoom. On information and belief, it also offered student deferrals.

**D.  The University's Health Sciences and Immunization Program.**

41.     Med-SLP is overseen by the University's Health Sciences and Immunization Program (**HSIP**).

42.     HSIP "ensures students enrolled in health science academic programs comply with the requirements detailed in the University's affiliation agreements with clinical and practicum training sites."

43.     At all times relevant, HSIP oversaw all medical and religious vaccine exemption requests.

44.     At all relevant times, Defendant Janice Hutson was the HSIP Manager.

**E.  Defendants create a policy to consider religious exemption requests.**

45.     On September 29, 2021, the University created its UW COVID-19 Vaccination Student Religious Accommodation Request form.

46.     This form asked students seeking a religious accommodation to complete the form and return it to myshots@uw.edu. The form states that the University "will provide reasonable accommodation to qualified applications with sincerely held religious belief(s), practice(s), or observance(s), unless providing such accommodation would pose an undue hardship."

COMPLAINT                                    Page 7          Ellis | Li | McKinstry
CASE NO.                                                     1700 Seventh Avenue, Suite 1810
                                                             Seattle, WA 98101-1820
                                                             206.682.0565  Fax: 206.625.1052

47.     Section 1 of the form requires students to receive "COVID-19 vaccination medical counseling," where a health care provider discusses "with the student named above the benefits of the COVID-19 vaccine and the risks of not receiving the COVID-19 vaccine."

48.     Section 2 of the form is required only for HSIP students. It notes that proclamation 21-14.1 "requires all health care workers, including student trainees, in Washington healthcare settings to be fully vaccinated by October 18, 2021."

49.     This section requires that requesting students:

- Describe the religious belief, practice or observance that they believe necessitates a religious exemption request;

- Explain why their sincerely held belief prevents them from receiving the COVID-19 vaccine;

- Explain how long the student has held those beliefs;

- State whether they have received any vaccine as an adult; and

- State whether their beliefs include objections to other vaccines.

50.     On information and belief, Defendants were personally involved in development of that purported exemption and accommodation process—and from the outset—intended to refuse to accommodate any exemption requests for students with clinical requirements based on religious belief.

51.     On information and belief, Defendants did not require employees or patients at clinical affiliations to participate in any exemption or accommodation process.

**F.  Defendants resolve to categorically deny all clinical student religious exemption requests.**

52.     On January 25, 2022 (after the Mandate had been lifted) Ms. Hutson wrote in an email to University Health Sciences Associate Deans regarding the University's upcoming COVID-19 vaccine addendum. In that email, Ms. Hutson

COMPLAINT                                              Page 8
CASE NO.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

wrote that HSIP purposefully drafted this policy "ambiguous" to "not accept [religious exemptions] going forward."

> . . . Daniel suggested that the language remain ambiguous enough to decide later whether previously approved religious exemptions will be honor[ed] or revoked. It may be an option to allow accommodated religious exemptions that are already approved to remain in place and not accept them going forward.

53. In response, Teresa Evans-Campbell inquired about whether students with religious exemptions could participate in remote placements.

> Our Assistant Dean of Field Education (Social Work – Seattle) is wondering if we can offer only remote placements for students who are not vaccinated.

54. On February 17, 2022, the University published its *Health Sciences Immunization Program (HSIP) Policy Addendum: COVID-19 Vaccination Requirements*.

55. Despite Ms. Evans-Campbell's offered reasonable accommodation, this addendum categorically denied any and all religious exemption requests for sincerely held religious beliefs.

**2. Religious Exemptions:**

> a. At such times as the CDC adds COVID-19 vaccination to the recommendations for healthcare workers, religious exemptions will no longer be accepted by HSIP. HSIP requires all CDC recommended vaccination for healthcare workers and does not permit religious exemption.

56. To be sure, on October 27, 2022, Ms. Hutson instructed Defendant Amy Rodda (University Director of Clinical Education for Speech and Hearing) that: "[r]eligious exemptions will not be accommodated in a clinical setting."

57. Notwithstanding the intent to categorically deny religious accommodation and exemption requests by students with clinical requirements, the purported exemption and accommodation process gave broad discretion to an evaluator and was inherently subjective.

COMPLAINT
CASE NO.

Page 9

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

58.　　Defendants purported to use that broad discretion to deny every request by students with clinical requirements for religious accommodation or exemption.

59.　　From the outset, Defendants determined that no accommodation for a religious student with clinical requirements would be granted.

60.　　Defendants did not make the same categorical determinations concerning medical exemption or accommodation requests. Further, on information and belief, Defendants' evaluation of medical exemption or accommodation requests did not turn on the requested duration of the request (for example, due to a temporary illness).

61.　　On information and belief, the University was investigating whether to remove COVID-19 religious exemptions from HSIP by February 2023.

**G. The University accepts Ms. Eidenmuller to Med-SLP.**

62.　　Med-SLP was Ms. Eidenmuller's "dream" graduate program. She devoted her undergraduate years to disciplined study, combining coursework with volunteer services and internships to position herself as a strong candidate for Med-SLP.

63.　　In December 2022, Ms. Eidenmuller applied to Med-SLP.

64.　　On March 10, 2023, the University notified Ms. Eidenmuller that she had been accepted.

65.　　Ms. Eidenmuller was overjoyed by her acceptance. She accepted the offer and paid a $500 non-refundable deposit on March 28, 2023.

**H. Defendants' deny Ms. Eidenmuller's religious exemption before she even submits a written request.**

COMPLAINT
CASE No.

Page 10

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

66. On March 17, 2023, Ms. Eidenmuller emailed Stanley Choi (University Graduate Advisor for Speech and Hearing Sciences) to confirm that her undergraduate religious exemption would carry over to the Med-SLP program.

67. That same day, Mr. Choi emailed Dr. Rodda about Ms. Eidenmuller's request.

68. On March 20, 2023, Dr. Rodda forwarded Mr. Choi's email to Ms. Hutson.

69. Ms. Hutson responded affirmatively that the request would be denied if the program requires clinical training.

70. Mr. Choi confirmed that Med-SLP includes clinical training.

71. Ms. Hutson replied that "[t]he religious exemption would not be able to be accommodated . . ."

72. Subsequently, Mr. Choi referred Ms. Eidenmuller to Ms. Hutson.

73. On March 28, 2023, Ms. Hutson had a phone call with Ms. Eidenmuller to discuss her religious exemption request.

74. During the phone call—and before Ms. Eidenmuller had even submitted a formal request—Ms. Hutson stated that her religious exemption would be denied.

75. In compliance with Defendants' policy, Ms. Eidenmuller submitted a UW COVID-19 Vaccination Student Religious Accommodation Request form to HSIP on March 30, 2023.

76. In her written request, Ms. Eidenmuller expressly stated her religious convictions against taking the COVID-19 vaccine and demonstrated her religious beliefs were sincerely held. She explained:

> My religious faith as a Christian is the foundation of my life. My religious faith informs the decisions I make every day and is the basis for my request for religious exemption of the COVID-19 vaccine. I pray God continues to grant me wisdom and direction daily, including my steps in the decision processes surrounding

COMPLAINT
CASE NO.

Page 11

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

COVID-19. Because I believe and observe that sin is defined as anything that violates the will of God as clearly and repeatedly stated in the Bible, it is my sincerely held conviction that taking the COVID-19 vaccine, or any vaccine that has used aborted fetal tissue in its testing and/or development, would leave me in sin before God. I clarify this position further in the next question. Included in my prayers has been asking God to provide direction regarding the current COVID-19 shot requirement for my UW grad program for which I am accepted and enrolled. In this time of deeply reflective prayer and discernment, the Holy Spirit has moved on my heart and conscience that I must not accept the COVID-19 shot nor the Novavax shot, which used aborted fetal cells in its testing phase. If I were to go against these religious beliefs that have been placed on my heart, I would be sinning and impacting my relationship with God, as well as deeply violating my conscience and sincerely held religious beliefs. As a reasonable accommodation, I am more than willing to wear a mask around any patients I work with and/or test weekly for Covid at my own expense.

I have discerned and prayed extensively about my response to the COVID-19 shot mandate, and in light of my religious and pro-life beliefs, as well as the freedom of choice and free will that God bestows on each of us, I am requesting a religious exemption. I fully believe and practice the foundational Christian belief that the human body belongs to God and is the temple of the Holy Spirit (1 Corinthians 6:19-20). I further believe that innocent life is sacred to God, from conception, to birth, to natural death (Jeremiah 1:5). Because aborted fetal cell lines were used by the manufacturers of the COVID-19 vaccine as part of their development or testing process, my religious faith prohibits me from participating in or benefiting from any abortion, regardless of how long ago that abortion occurred. Because I've been a Christian nearly my entire life, the sanctity of life has always been at the core of my belief system. Violating this belief in any way, as taking the COVID-19 or Novavax shot does, would violate my conscience and sincerely held religious beliefs. These are foundational beliefs and practices in my faith which I have observed and lived by for the entirety of my Christian life.

However, to the best of my knowledge, no vaccine or medicine I have taken over the course of my life has come from aborted fetal cell lines, so the comparison of all other vaccines or medications to the Covid-19 vaccine is not an accurate comparison. Had I been offered medicine or vaccines in the past that were manufactured or created in the same way the Covid-19 and similar vaccines have been, I would have refused them as well.

77.    In her written request for an exemption, Ms. Eidenmuller offered an initial suggestion for reasonable accommodation, stating:

> As a reasonable accommodation, I am more than willing to wear a mask around any patients I work with and/or test weekly for Covid at my own expense.

78. On information and belief, Ms. Eidenmuller's proposed reasonable accommodation was the same—if not *more* stringent—than prior COVID-19 era procedures.

79. Ms. Eidenmuller was never offered an explanation of why this reasonable accommodation for her request was not feasible.

80. On information and belief, Ms. Hutson did not investigate whether any clinical affiliates were in fact able to accommodate Ms. Eidenmuller.

81. On April 4, 2023, Ms. Eidenmuller's request for a religious exemption or accommodation was denied.

82. The University sent Ms. Eidenmuller a denial letter, claiming its "infectious disease experts evaluated the essential functions of your student trainee requirements to determine whether there was a possible accommodation that would mitigate the threat posed by allowing you to remain unvaccinated while performing your training duties."

> You submitted a request for an exemption to the Health Sciences Immunization Program (HSIP) COVID-19 vaccination requirement. In accordance with university policy, we have reviewed the information you provided and are unable to approve your request for an exemption based on a sincerely held religious belief, practice, or observance. We would like to provide information on the review process in an effort to clarify your exemption denial and the University's approach to each individual request.

> To qualify for an approved religious exemption from the vaccine requirement:

> A student trainee must explain how the vaccine requirement conflicts with their sincerely held religious belief, practice, or observance.

> AND

COMPLAINT
CASE NO.

Page 13

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

> The University or healthcare entity must be able to accommodate the unvaccinated worker or student without undue hardship.

> The University's infectious disease experts evaluated the essential functions of your student trainee requirements to determine whether there was a possible accommodation that would mitigate the threat posed by allowing you to remain unvaccinated while performing your training duties. For student trainees in healthcare settings, an exemption from the vaccine requirement would compromise the safety of patients/clients and other healthcare workers, and it would pose an undue hardship because you are either involved in direct patient/client care or work in an area with direct or indirect patient contact. Personnel and trainees working with patients/clients or around patient/client-care areas must be fully vaccinated to provide all patients/clients with a sufficiently safe environment and to protect public health.

> The University has determined that identifying non-healthcare settings for unvaccinated students to complete the required training in their health sciences program is either not applicable to the program or an undue burden to the University and the limited practicum sites

83. The letter concluded by again asserting that the University "individually evaluated" Ms. Eidenmuller's request and did not deny her request based on her sincerely held religious beliefs.

> We hope this information helps you understand how the University individually evaluated your request and did not deny your request based on your stated religious belief, practice, or observance.

84. Based on Ms. Eidenmuller's written submission, Defendants accepted that Ms. Eidenmuller has a sincere religious belief that prevents her from being able to receive the COVID-19 vaccine. The sincerity of Ms. Eidenmuller's religious beliefs and sufficiency of her request for an exemption because of her religious beliefs have never been questioned by Defendants.

### I. Defendants conduct a sham "appeal."

COMPLAINT
CASE NO.

Page 14

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

85. On April 6, 2023, Ms. Eidenmuller emailed Ms. Hutson to inquire about the appeal process. Ms. Hutson directed her to contact Dr. Rodda.

86. On April 12, 2023, Ms. Eidenmuller emailed Dr. Rodda requesting to appeal her exemption denial.

87. Dr. Rodda forwarded the email to Adrian Lee (Chair of the Speech and Hearing Sciences Department) writing that Ms. Hutson had *already* told her that an appeal must be denied.

88. Dr. Lee responded with agreement.

89. On information and belief, Dr. Rodda did not investigate whether any clinical affiliates were in fact able to accommodate Ms. Eidenmuller.

90. Dr. Rodda then responded to Ms. Eidenmuller that she did not have time to talk. Instead, she merely wrote that she could not approve the request based on "affiliation agreements."

91. No further communication was made until nearly a month later.

92. On May 8, 2023, the University sent a university-wide email announcing that "the UW will discontinue its requirement that employees and students receive a COVID-19 vaccine."

93. The next day, Ms. Eidenmuller emailed Dr. Rodda regarding the new announcement.

94. Dr. Rodda immediately forwarded the email to Ms. Hutson, writing "do you have any suggestions for my response?"

95. Ms. Hutson responded that leadership was still having discussions "regarding how to proceed" and suggested that Ms. Eidenmuller be offered a deferral.

96. On May 10, 2023, Dr. Rodda forwarded Ms. Eidenmuller's email to Mr. Choi, Dr. Lee, and Sara Kover (University Graduate Advisor).

COMPLAINT
CASE NO.

Page 15

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

97. Dr. Kover responded: "My impression was that this was more or less a 'no exceptions' situation . . ."

98. Dr. Lee agreed: "I think I'm on the same view as [Dr. Kover] on this."

99. Dr. Rodda then emailed Ms. Eidenmuller, this time asserting that Ms. Eidenmuller's appeal could not be granted under HSIP guidelines.

100. On May 18, 2023, Ms. Eidenmuller emailed Mr. Choi requesting a copy of the Med-SLP student handbook and list of clinical affiliates.

101. Mr. Choi responded by cc'ing Dr. Rodda.

102. Defendants never provided Ms. Eidenmuller with the requested 2023-2025 Med-SLP student handbook or list of clinical affiliates.

103. Instead, Dr. Rodda promptly forwarded Ms. Eidenmuller's email to Julie Dalessio (University Director of Academic Affairs) and Kristie Spencer (University Graduate Program Coordinator).

104. Ms. Dalessio responded by acknowledging that the University "might potentially be willing to consider an exception in our own clinic," and adding her own opinion that Ms. Eidenmuller "will be hard pressed to find a healthcare setting that will hire her without this vaccine so she should probably think very hard about whether a medical SLP job (or any healthcare job) is the right way to go."

105. Dr. Spencer chimed in, writing that she thought requirements would change and offering potential reasonable accommodations (deferral).

> My sense is requirements WILL change healthcare settings (according to Gottlieb below) but not in time for this student. Apparently there may be a UW school of Medicine changes in the direction of leniency coming as early as June 12th or so. options seem to be:
>
> - require immediate immunization
>
> - defer requirement for another few weeks to see if there's change
>
> - re-apply next year hope requirements change

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

- grant vaccine deferral for 1st year while she's in our clinic but if no national change to guidelines/HSIP, immunization will be required.

106.    On information and belief, deferrals were previously offered to students during the COVID-19 era.

107.    Despite Dr. Spencer and Ms. Dalessio's suggestions, Dr. Rodda's May 19, 2023 email to Ms. Eidenmuller offered zero accommodations.

Hi Jenna,

All clinical graduate students are required to participate in the Health Sciences Immunization Program (HSIP) which covers our clinical compliance for immunizations. To complete our program, students must rotate through the UW Speech & Hearing Clinics as well as our community placements. Our clinic and community placements are healthcare settings, requiring compliance with HSIP policies (includes COVID-19 vaccination). It is possible that requirements may change in the future academic years but our HSIP administrator has indicated that it is highly unlikely change would occur for academic year 23-24. Furthermore, gaining and maintaining compliance with HSIP is the requirement currently in place for all incoming MS students.

Your options are:

1. comply with HSIP policy

2. decline admission this year, see if policy changes for 24-25 and reapply at that time. I know this is a difficult situation. I hope these options and our policies are clear to aid your decision making.

108.    After Dr. Rodda forwarded her email to others, Ms. Dalessio determined that a quick deadline should be set.

109.    Dr. Rodda agreed, emailing Ms. Eidenmuller that evening with a deadline of merely one week.

I forgot to include that our deadline is approaching for decisions, so we need to know your decision no later than the end of next week.

**J.  Defendants forcefully remove Ms. Eidenmuller from Med-SLP.**

COMPLAINT
CASE NO.

Page 17

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

110. On May 22, 2023, attorney Sherelle Willingham sent a letter to Ms. Hutson and Dr. Rodda on behalf of Ms. Eidenmuller explaining that its actions were violating Washington and federal law.

111. On May 24, 2023, Ms. Willingham also sent a copy of the letter to Ana Mari Cauce (University President).

112. The University did not acknowledge its wrongdoing. Instead, on May 25, 2023, Katia Harb (University Senior Director of the Environmental Health and Safety Department) sent Ms. Willingham a letter falsely alleging that Med-SLP "was consulted to determine if Ms. Eidenmuller's area of study could be accommodated" and that on appeal "Dr. Amy Rodda confirmed . . . the inability of the program to accommodate the student's request."

113. On June 7, 2023, Dr. Rodda emailed Ms. Eidenmuller threatening to remove her from Med-SLP on June 9, 2023.

114. Early in the morning on June 10, 2023, Ms. Eidenmuller responded by formally objecting to the University's actions.

> I want to formally object to this forced removal of my enrollment in the MS Med-SLP program. This is a decision made on UW's end based on my religious beliefs which is in direct violation of the first amendment to free and exercise of religion. To flat out deny any religious exemptions is discriminatory and is also in violation of the equal protection clause. Because medical exemptions are granted, this proves that reasonable accommodations can in fact be made, so that is not a valid reason for my forced removal of this program. Prior to the vaccine being available, clinical coursework was still able to completed with different precautions taken. I have been nothing but willing to mask up, test daily at my own expenses, or meet any other demands the program might have in order for me to participate. My dream has been to attend UW's program, and to say I am heartbroken and deeply disappointed in how this has been handled is a grave understatement.

115. Dr. Rodda did not respond.

116. That same day, the University held graduation for Ms. Eidenmuller's undergraduate degree in Speech and Hearing Sciences.

COMPLAINT
CASE NO.

Page 18

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

117. During the graduation ceremony, the class speaker praised the University for its COVID-19 pandemic accommodations – including masking during in-person classes and conducting clinicals via Zoom.

118. Dr. Rodda announced graduates' names and post-graduation plans during the ceremony. Ms. Eidenmuller submitted a form regarding her post-graduation plans, indicating that she was accepted to Med-SLP. When Ms. Eidenmuller walked across the stage, Dr. Rodda chose to omit Ms. Eidenmuller's submission.

119. The joy Ms. Eidenmuller experienced at her acceptance was no match for the deep despair she felt on the day she was forcefully removed. For the first time in her life, she experiences depression and anxiety.

### K. Despite their resolve, Defendants grant dozens of exemptions – including a religious exemption for a different Med-SLP student.

120. Despite their resolve to categorically deny all clinical student religious exemption requests, Defendants approved dozens of medical and religious exemptions.

121. For example, on information and belief, in 2021, HSIP approved no less than three medical exemptions and four religious exemptions.

122. On information and belief, in 2022, HSIP approved no less than four medical exemptions.

123. On information and belief, in 2023, HSIP approved no less than twenty-five medical exemptions and one religious exemption.

124. On information and belief, in 2024, HSIP approved no less than eight medical exemptions and fifteen religious exemptions.

125. On information and belief, some of these students with exemptions included students with clinical training requirements.

COMPLAINT
CASE NO.

Page 19

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

126. For example, in December 2023—merely six months after Ms. Eidenmuller was forcefully removed from Med-SLP—another Med-SLP student inquired to the University about receiving a religious exemption to the COVID-19 vaccine.

127. On December 21, 2023, Dr. Rodda emailed the student regarding his request.

128. The student confirmed he was pursuing a religious exemption.

129. On December 22, 2023, Dr. Rodda emailed the student and noted that a religious exemption might impact his clinical rotation opportunities.

130. On December 22, 2023, Ms. Hutson emailed Dr. Rodda and the student claiming that individual programs had autonomy to evaluate religious exemptions.

131. In that same email, Ms. Hutson offered the student an extension.

132. On December 26, 2023, Ms. Hutson emailed Dr. Rodda and wrote that "it might not make sense" to offer the student a religious exemption.

133. On information and belief, Defendants provided the student an extension for his COVID-19 vaccine requirement to February 9, 2024.

134. On information and belief, Defendants provided the student an "Approved Religious Exemption" on February 9, 2024.

135. On information and belief, the student completed clinical rotations at Encompass Northwest in Snoqualmie, Washington, from January 2024 to March 2024.

136. On information and belief, the student completed clinical rotations at the University Autism Center from March 2024 to June 2024.

137. On information and belief, the student completed clinical rotations at St. Luke Children's Hospital in Meridian, Idaho from June 2024 to August 2024.

138. On information and belief, the student graduated from the University with a Med-SLP degree in 2024.

COMPLAINT
CASE NO.

Page 20

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

139. On information and belief, the student is now a Speech and Language Pathologist at Legacy Health in Salmon Creek, Washington.

## V. LEGAL ALLEGATIONS

140. At all relevant times, Defendants acted under color of state law and exercised authority for the University. Ms. Eidenmuller has no adequate or speedy remedy at law to correct or redress the deprivation of her rights.

141. Defendants' actions and policies did not and do not serve any legitimate or compelling state interest. Even if they did, they are not narrowly tailored to serve any such interests.

142. It was clearly established that Ms. Eidenmuller has a First Amendment right to request religious accommodation and to be free from retaliation based on her sincerely held religious beliefs.

143. Defendants were aware of these legal obligations. Each had access to legal counsel, policy guidance, and case law confirming that the U.S. Constitution and state law prohibit categorical denials of religious accommodations. Each were expressly informed by Ms. Eidenmuller's legal counsel.

144. Despite this, Defendants acted with deliberate indifference to Ms. Eidenmuller's rights. They enforced a blanket policy that no religious accommodation requests for clinical students would be granted, without any individualized assessment.

145. No reasonable official could believe that denying every clinical student religious accommodation request—without exception, without explanation, and without considering less restrictive alternatives—was lawful.

146. And despite this policy, Defendants did in fact approve religious exemptions and accommodations for other students – including a Med-SLP student.

COMPLAINT
CASE NO.

Page 21

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

147. Defendants' simultaneous approval of medical exemptions—while removing Ms. Eidenmuller for requesting a religious exemption—underscores the arbitrary and pretextual nature of the approval process.

148. The absence of undue hardship is highlighted by the approval of another Med-SLP student's religious exemption mere months later, and ability to participate in several clinic affiliates with his exemption. This includes Encompass Northwest, the University Autism Center, and St. Luke Children's Hospital.

149. This inconsistency shows that Defendants' actions were not taken in pursuit of public health, but instead reflected hostility toward disfavored religious exercise. Any reasonable official would know that such selective enforcement violates clearly established constitutional norms.

150. Defendants denied Ms. Eidenmuller's accommodation request after accepting the sincerity of her religious beliefs. By doing so, they conceded the first element of the accommodation framework but still refused to engage in a genuine interactive process—despite offering no evidence of undue hardship.

## VI.    CLAIMS

### A.  Count I – Free Exercise

**Count I**

**Violation of the First Amendment to the U.S. Constitution and Article I, Section 11 of the Washington State Constitution - Free Exercise**

**All Defendants**

**(42 U.S.C. § 1983)**

151. Ms. Eidenmuller realleges and incorporates by reference all preceding paragraphs.

152. This is a claim against Defendants under 42 U.S.C. § 1983 in their personal capacities.

COMPLAINT
CASE NO.

Page 22

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

153. Defendants violated Ms. Eidenmuller's rights to Free Exercise under the First Amendment of the U.S. Constitution and Article I, Section 11 of the Washington State Constitution.

154. Ms. Eidenmuller has sincerely held religious beliefs that compel her to refuse the COVID-19 vaccine. She articulated those sincerely held religious beliefs to Defendants and requested reasonable accommodation.

155. Ms. Eidenmuller's First Amendment and Article I, Section 11 Free Exercise rights were violated, among other ways, in the sham, discretionary evaluation process and by the Defendant's policy of categorically excluding religious people from accommodations for HSIP programs with clinical training.

156. This process gave broad discretion to an evaluator and was not neutral or generally applicable, as evidenced (in-part) by Defendants' approval of a religious exemption for a different Med-SLP student merely months later.

157. The individual Defendants personally directed and participated in creating and executing this non-neutral decision making process.

158. This policy intentionally treated Ms. Eidenmuller's religious accommodation request differently from medical exemption requests. This policy also treated Ms. Eidenmuller's religious accommodation request different than it did employees and patients at clinics it engaged under clinical affiliation agreements.

159. This discriminatory treatment was not narrowly tailored to serve a compelling government interest, nor was it rationally related to any legitimate governmental objective.

160. Defendants had alternative, less restrictive means to achieve any legitimate state interest.

161. At the time, Ms. Eidenmuller's constitutional rights were clearly established. Defendants had access to legal counsel, policy guidance, case law, and were expressly informed by Ms. Eidenmuller's legal counsel.

COMPLAINT
CASE NO.

Page 23

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

162. Defendants performed their actions under a policy, practice, custom, and usage of the University.

163. As a direct and proximate result of Defendants' actions, Ms. Eidenmuller suffered damages, including economic, emotional, and reputational damages.

**B. Count II – Equal Protection Violation**

**Count II**

**Violation of the Fourteenth Amendment to the U.S. Constitution and Article I, Section 12 of the Washington State Constitution - Equal Protection**

**All Defendants**

**(42 U.S.C. § 1983)**

164. Ms. Eidenmuller realleges and incorporates by reference all preceding paragraphs.

165. This is a claim against Defendants pursuant to 42 U.S.C. § 1983 in their personal capacities.

166. Defendants violated Ms. Eidenmuller's rights to equal protection under the Fourteenth Amendment of the U.S. Constitution and Article I, Section 12 of the Washington State Constitution.

167. The Equal Protection Clauses of the Fourteenth Amendment and the Washington Constitution guarantee that individuals similarly situated be treated alike.

168. The UW COVID-19 Vaccination Student Religious Accommodation Request form and *Policy Addendum: COVID-19 Vaccination Requirements* were created, implemented, and enforced with indifference to Ms. Eidenmuller's constitutional rights. In implementing these policies, Defendants created and directed program directors with clinical training to implement a policy that would deny all religious exemption or accommodation requests.

COMPLAINT
CASE NO.

Page 24

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

169.    Defendant intentionally subjected Ms. Eidenmuller to differential treatment compared to similarly situated individuals – for example, individuals with medical exemption requests, employees and patients engaged under clinical affiliation agreements, and another Med-SLP student merely six months later. This differential treatment had no rational basis and was based on Ms. Eidenmuller's religious beliefs.

170.    This discriminatory treatment was not based on an application of neutral or generally applicable policy.

171.    This discriminatory treatment was not narrowly tailored to serve a compelling government interest, nor was it rationally related to any legitimate governmental objective.

172.    At the time, Ms. Eidenmuller's constitutional rights were clearly established. Defendants had access to legal counsel, policy guidance, case law, and were expressly informed by Ms. Eidenmuller's legal counsel.

173.    Defendants performed their actions under a policy, practice, custom, and usage of the University.

174.    As a direct and proximate result of Defendants' actions, Ms. Eidenmuller suffered damages, including economic, emotional, and reputational damages.

C.  **Count III – WLAD**

<u>**Count III**</u>

**Violation of Chapter 49.60 RCW – WLAD**

**Defendants Ana Mari Cause, Janice Hutson, Amy Rodda, & Katia Harb**

175.    Ms. Eidenmuller realleges and incorporates by reference all preceding paragraphs.

COMPLAINT
CASE NO.

Page 25

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

176. The Washington Law Against Discrimination (*WLAD*), RCW 49.60 et seq., prohibits public accommodations from discriminating against individuals on the basis of religion. RCW 49.60.030(1)(b); RCW 49.60.215(1)(a).

177. Likewise, it is unfair practice to aid, abet, or encourage violations of WLAD. RCW 49.60.220.

178. At all relevant times, Ms. Eidenmuller was an undergraduate student and Med-SLP admitted student at the University. The University is a "public accommodation" as defined by WLAD. RCW 49.60.040(2).

179. Ms. Eidenmuller is a Christian who sincerely held religious beliefs prevent her from receiving the COVID-19 vaccine.

180. In compliance with Defendants' policy, Ms. Eidenmuller submitted a timely and thorough request for a religious exemption or accommodation. Her request detailed her sincerely held religious beliefs, grounded in Scripture, and proposed a reasonable accommodation—which mirrored that previously implemented by Defendants.

181. However, from the outset, Defendants had predetermined that no religious exemption or accommodation would ever be granted. Defendants implemented a formal process for religious accommodation that was, in substance, a sham.

182. Despite this, Defendants in fact provided another Med-SLP student a religious exemption mere months after denying Ms. Eidenmuller's request.

183. Ms. Eidenmuller's proposed accommodation—masking and weekly testing—were never meaningfully considered. Nor were proposed accommodations by other University staff – among them: completing clinical training at the University or deferral. Ms. Eidenmuller was never told why those accommodations were rejected.

COMPLAINT
CASE NO.

Page 26

184. Defendants' refusal to accommodate Ms. Eidenmuller's religious beliefs, while accommodating other categories of exemption, reflects a clear hostility toward religion and a double standard prohibited by WLAD.

185. Defendants' refusal to accommodate Ms. Eidenmuller's religious beliefs was further undermined by their lack of policy for clinical affiliate employees and patients. This disparate treatment further evidences Defendants' discriminatory intent and failure to engage in good-faith accommodation process.

186. As a direct and proximate result of Defendants' unlawful actions, Ms. Eidenmuller suffered reputational harm, emotional distress, and other compensable injuries.

**D. Count IV – Breach of Contract**

**Count IV**

**Breach of Contract**

**Defendant University of Washington**

187. Ms. Eidenmuller realleges and incorporates by reference all preceding paragraphs.

188. At all relevant times, Ms. Eidenmuller was an undergraduate student and Med-SLP admitted student at the University.

189. The University and Ms. Eidenmuller's relationship was primarily contractual in nature.

190. At all relevant times, the University maintained handbooks, policies, addendums, bulletins, forms, and other publications that formed contractual obligations to its students.

191. This includes, but is not limited to, the University's UW COVID-19 Vaccination Student Religious Accommodation Request form, which states that the University "will provide reasonable accommodation to qualified applications with

COMPLAINT
CASE NO.

Page 27

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

sincerely held religious belief(s), practice(s), or observance(s), unless providing such accommodation would pose an undue hardship."

192.    The University breached its contractual obligations to Ms. Eidenmuller by, among other things:

- Denying her request for a religious exemption or accommodation;
- Failing to adequately consider reasonable accommodations;
- Failing to investigate whether clinical affiliates could in fact accommodate Ms. Eidenmuller;
- Resolving to deny any religious exemption requests;
- Denying her appeal; and
- Forcefully removing her from Med-SLP.

193.    The absence of undue hardship is highlighted by the approval of another Med-SLP student's religious exemption mere months later, and ability to participate in several clinic affiliates with his exemption.

194.    As a result of the University's breach, Ms. Eidenmuller has suffered and continues to suffer damages in an amount to be proved at trial.

**E.  Count V – Breach of Good Faith and Fair Dealing**

**Count V**

**Breach of the Covenant of Good Faith and Fair Dealing**

**Defendant University of Washington**

195.    Ms. Eidenmuller realleges and incorporates by reference all preceding paragraphs.

196.    The University and Ms. Eidenmuller's relationship was primarily contractual in nature.

197.    Every contract contains an implied duty of good faith and fair dealing, which obligates the parties to cooperate with each other so that each may obtain the

COMPLAINT
CASE NO.                                          Page 28

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

full benefit of performance. This duty requires that the parties perform in good faith the obligations imposed by their agreement.

198.    The University breached its covenant of good faith and fair dealing to Ms. Eidenmuller by, among other things:

- Denying her request for a religious exemption or accommodation;
- Failing to adequately consider reasonable accommodations;
- Failing to investigate whether clinical affiliates could in fact accommodate Ms. Eidenmuller;
- Resolving to categorically deny religious exemption requests;
- Directing program directors to categorically deny religious exemption appeals; and
- Forcefully removing Ms. Eidenmuller from Med-SLP.

199.    As a result of the University's breach, Ms. Eidenmuller has suffered and continues to suffer damages in an amount to be proved at trial.

## VII.    REQUESTS FOR RELIEF

WHEREFORE, Ms. Eidenmuller requests that the Court enter judgment in her favor, and against the Defendants, for full relief, including the following:

A.    An award for actual, consequential, and incidental financial losses,

B.    An award of compensatory damages;

C.    Attorney's fees and costs; and

D.    Any and all other appropriate relief to which Ms. Eidenmuller may be entitled, including all "appropriate relief" within the scope of FRCP 54(c).

## VIII.   JURY DEMAND

Ms. Eidenmuller demands that all issues of fact be determined by a jury.

DATED this April 3, 2026

COMPLAINT                                     Page 29          Ellis | Li | McKinstry
CASE NO.                                                                 1700 Seventh Avenue, Suite 1810
                                                                         Seattle, WA 98101-1820
                                                                         206.682.0565  Fax: 206.625.1052

ELLIS, LI & McKINSTRY PLLC

By:   *s/ Payton Tompkins*

Keith Kemper, WSBA No. 19438
Payton Tompkins, WSBA No. 61724
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
Telephone: (206) 682-0565
Fax: (206) 625-1052
Email: kkemper@elmlaw.com
         ptompkins@elmlaw.com
*Attorneys for Jenna Eidenmuller*

COMPLAINT                              Page 30              Ellis | Li | McKinstry
CASE NO.                                                   1700 Seventh Avenue, Suite 1810
                                                          Seattle, WA 98101-1820
                                                          206.682.0565  Fax: 206.625.1052